UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
LINDA MAGNANI,

        Plaintiff,

-against-

NORTH SHORE CENTRAL SCHOOL
DISTRICT and MARC FERRIS,

        Defendants.
-------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 2: 16-cv-2519 (FB)(SMG)

*Appearances:*

| | |
|---|---|
| *For the Plaintiff*: | *For the Defendants*: |
| MICHAEL G. O'NEIL, ESQ. | ADAM I. KLEINBERG, ESQ. |
| Office of Michael G. O'Neil | Sokoloff Stern LLP |
| 30 Vesey Street, Suite 301 | 179 Westbury Avenue |
| New York, New York 10007 | Carle Place, New York 11514 |

**BLOCK, Senior District Judge:**

    Plaintiff Linda Magnani, a former probationary and leave replacement teacher at North Shore Middle School ("Middle School"), alleges that her employer, the North Shore Central School District ("District"), and the school's former principal, Marc Ferris, discriminated against her because of her age. The defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, its motion is denied.

1

# I

The following facts, which are taken from the parties' Rule 56.1 statements and supporting documentation, are undisputed unless otherwise noted. Where disputed, they are presented in the light most favorable to Magnani. *See, e.g,. Federal Ins. Co. v. American Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). The Court will also "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor" of Magnani. *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019).

Magnani was born in 1955. In 2014, she was 59. That August, Magnani took a leave replacement position teaching sixth grade math at the Middle School for the 2014–15 school year. Over the next few months, Ferris and Amy Dimeola—the teacher leader for math and science teachers—periodically observed Magnani in the classroom. They contend that they became concerned about Magnani's performance because her teaching did not engage the students. Ferris voiced this concern to the assistant superintendent beginning in early October. Ferris claims he devised a support plan to help Magnani improve her teaching, including weekly meetings with Dimeola. Magnani contends they met only three times, that Dimeola's advice was inconsistent, and that she was criticized even when she implemented Dimeola's suggestions. Magnani continued to receive negative performance feedback from

Ferris and Dimeola. She also received negative feedback from the assistant principal, Rachel Green.

In November, Ferris recommended to the superintendent, Edward Melnick, that Magnani be terminated. To complete the termination, Melnick would have to recommend her termination to the Board of Education, which would then have to vote to terminate her. In December, Melnick told Magnani that he would be recommending to the Board that she be terminated. Magnani also received a letter on December 12, 2014, stating that her position "will be terminated on January 30, 2015." Ex. JJ. To avoid having a midyear termination on her record, Magnani resigned on December 19, before the Board could vote to approve her termination.

Magnani brings (1) an age discrimination claim under the Age Discrimination in Employment Act ("ADEA") against the District; (2) an age discrimination claim under the New York State Human Rights Law ("NYSHRL") against Ferris; and (3) a Section 1983 Equal Protection claim against Ferris. The defendants argue that they should be granted summary judgment on all three claims. They deny that Magnani suffered an adverse employment action and that the record does not give rise to an inference of discrimination. They argue that they had a legitimate, nondiscriminatory reason for recommending that the Board terminate Magnani and that she cannot show pretext. They claim that Ferris cannot be held personally liable under the NYSHRL and that he is entitled to qualified immunity for the § 1983

claim. The defendants argue that the ADEA preempts Magnani's § 1983 claim. They also claim that her expert's opinion testimony is inadmissible.

## II

A court may grant summary judgment only if "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**A. ADEA and NYSHRL Age Discrimination Claims[1]**

The burden-shifting analysis laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), governs employment discrimination claims brought under the ADEA. *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012). Under that framework, a "plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

---

[1] Because the standards for discrimination claims are the same under the ADEA and the NYSHRL, the Court analyzes the claims together. *See Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.,* 374 F.3d 66, 71 n. 2 (2d Cir.2004).

4

1. **Prima Facie Case**

To establish a prima facie case under the ADEA, a plaintiff must show "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Bucalo*, 691 F.3d at 129.

   a. **Adverse Employment Action**

A plaintiff can establish an adverse employment action by demonstrating constructive discharge. *See Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987). Though constructive discharge cases usually involve employers "deliberately maki[ing] an employee's working conditions so intolerable that the employee" is forced to resign, *Id.* at 1188, the Second Circuit has implied that it can also arise where an employer has given a plaintiff the choice to resign or be terminated, *see id.* at 1188–89 (citing *Welch v. Univ. of Tex.,* 659 F.2d 531, 533–34 (5th Cir.1981) ("finding constructive discharge where employer clearly expressed his desire that employee resign because such statement would force a reasonable person to resign.")); *see also Rupert v. City of Rochester, Dep't of Envtl. Servs.*, 701 F. Supp. 2d 430, 440 (W.D.N.Y. 2010) ("A triable issue of fact as to constructive discharge may be demonstrated by proof that an employee was presented with the decision to resign or be fired.").

5

However, when a plaintiff had an alternative to resignation, constructive discharge is harder to establish. *See Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1157 (2d Cir. 1993); *Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F. Supp. 2d 215, 235 (E.D.N.Y. 2012). For example, the plaintiff in *Weisbecker*, another case involving a probationary teacher who was recommended to a school board for termination, did not experience constructive discharge, in part because she had the alternative of writing a letter to the board defending herself.

Here, Magnani has created an issue of fact regarding whether she suffered a constructive discharge. By testifying at her deposition that a midyear termination would interfere with her attempts to find future work, she provided evidence that she was given the choice between resigning or risking her entire career. Though *Weisbecker* is factually similar to this case, Magnani stated in her declaration that a midyear termination is especially rare and stigmatizing. *Weisbecker* is, therefore, distinguishable. Further, the Court declines to follow *Weisbecker*'s reasoning that a plaintiff's opportunity to submit a letter to the board defending herself—which both the plaintiff in *Weissbecker* and Magnani had—is a true alternative to resignation. As Magnani points out, *Weisbecker* cites cases where the plaintiffs chose to resign rather than undergo pre-termination hearings before an impartial adjudicator. That is a more substantial alternative to resignation than submitting a letter.

### b. Inference of Discrimination

In the age discrimination context, an inference of discrimination can be drawn from "the fact that a replacement is substantially younger than the plaintiff." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). An eight-year age difference is enough to support such an inference, even if both individuals are within the protected class. *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007). Though not dispositive, it is harder to find an inference of discrimination when the plaintiff was "well within the protected class when first hired." *Grady v. Aff. Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997).

Here, Kelly Rakeman, who is about 25 years younger than Magnani, returned early from what was set to be a half-year leave of absence. Rakeman usually taught math, and Magnani had been hired to fill that slot while Rakeman was on leave. Though Rakeman was originally supposed to teach social studies upon her return, she resumed teaching math after Magnani left. In turn, Carol Manning, who is about 15 years younger than Magnani, stayed on for the rest of the schoolyear as a leave replacement social studies teacher, instead of leaving midyear as originally planned. Both women are sufficiently younger than Magnani to give rise to such an inference at this stage. And, though Magnani was already 55 when the District hired her, this

fact merely weakens her case rather than prevents her from establishing a prima facie case.[2]

### 2. Legitimate, Nondiscriminatory Reason

"After a plaintiff demonstrates a *prima facie* case of age discrimination, the defendant must produce evidence which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (emphases in original) (internal quotation marks omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). "This explanation must be clear and specific." *Carlton*, 202 F.3d 129, 136 (internal quotation marks omitted). "Ordinarily, plaintiff's evidence establishing a *prima facie* case and defendant's production of a nondiscriminatory reason for the employment action raise a question of fact to be resolved by the factfinder after a trial." *Id.* at 135.

Here, the District has provided evidence supporting a nondiscriminatory reason for recommending Magnani's midyear termination: dissatisfaction with "her teaching methods, classroom performance, and the low level of student engagement observed in her classroom." Ex. D, ¶ 12. If that dissatisfaction were genuine, those reasons would constitute a legitimate reason to recommend termination of a teacher.

---

[2] Hopefully this weakness will motivate the parties to resolve this case short of trial.

### 3. Pretext

When establishing pretext, "the plaintiff may rely on the evidence constituting the prima facie case, together with supportable inferences to be drawn from the false or erroneous character of the employer's proffered reason for the adverse action." *Carlton*, 202 F.3d at 135 (internal quotation marks omitted).

Here, Magnani has presented evidence that calls into question the legitimacy of the District's given reason for recommending her termination. Magnani testified at her deposition that Green "seemed very pleased that the children did very well" after observing Magnani on December 2. Ex. 1 at 156. However, Magnani testified that when she met with Green shortly thereafter, Green insisted that Ferris and Dimeola join them. Magnani testified that Green said at the meeting that she was seeing the same problems with Magnani's teaching as Ferris and Dimeola were, and that the students seemed "dead-like" in class. Ex. 1 at 166. Magnani argues that this change of heart after speaking with Ferris and Dimeola shows that Ferris influenced Green to fabricate negative performance evaluations. If the jury believed that Green had negative feedback for Magnani only after conferring with Ferris, it could find that the District's dissatisfaction with Magnani's teaching methods was a pretext for discriminatory intent.

### 4. Ferris's Personal NYSHRL Liability

Under the NYSHRL, it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under" the NYSHRL. "Based on this language, several courts have [held] that a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the HRL." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995).

Here, Ferris clearly participated in the events that led to Magnani's resignation. Therefore, if a jury found that the District discriminated against Magnani because of her age, it could also find that Ferris is personally liable.

## B. Section 1983 Claim

### 1. Preemption by the ADEA

The Second Circuit has not decided whether the ADEA preempts age discrimination claims under § 1983. *Volpi v. Ctr. Moriches Union Free Sch. Dist.*, 9 F. Supp. 3d 255, 257 (E.D.N.Y. 2014). However, "[t]he Second Circuit has consistently found that a plaintiff may bring a claim under § 1983, not to enforce rights conferred only by statute, but for distinct violations of a constitutional right." *Id.* Accordingly, the Court concludes that Magnani's § 1983 claim is not preempted and may proceed, provided that she is seeking to vindicate her constitutional rights.

## 2. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

Here, if a jury concludes that Ferris discriminated against Magnani on the basis of age, then he also violated her clearly established Equal Protection rights, and he would not be entitled to qualified immunity. *See Volpi v. Ctr. Moriches Union Free Sch. Dist.*, 9 F. Supp. 3d 255, 258 (E.D.N.Y. 2014).

## C. Expert James A. Monk

An expert witness's opinion is admissible if

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. The proponent of an expert's opinion bears the burden of proving admissibility. *U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

Further, "expert testimony is not admissible under Federal Rule of Evidence 702 if it usurp[s] . . . the role of the jury." *Callahan v. Wilson*, 863 F.3d 144, 153 (2d Cir. 2017), *cert. denied,* 138 S. Ct. 1261 (2018) (alterations in original) (internal quotation marks omitted).

The Court declines to decide at this point which, if any, of Monk's opinions are admissible, and it does not rely on them. The Court can make such determinations at trial. Notably, the record does not include a full report of Monk's credentials. It is Magnani's burden to provide the Court with that information so that it can determine his expertise. Further, any opinions that are based on credibility determinations of Magnani, Ferris, Dimeola, and others will not be admissible—that is a usurpation of the jury's role at trial.

### III

At trial, a jury must resolve the following issues of fact: whether Magnani suffered an adverse employment action; whether that adverse employment action resulted from discrimination; whether the defendants' given legitimate, nondiscriminatory reasons for that adverse employment action were merely pretextual; and whether Ferris can be held personally liable for any discrimination.

**IT IS SO ORDERED.**

/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

August 28, 2019
Brooklyn, New York